IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                              Case No. 1:24-cr-01819 KWR

MARIO GONSALEZ, JR.,
GUILLERMO GARCIA, JR., and
CRUZ ZERMENO,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF HSI SPECIAL AGENT AVILA

**THIS MATTER** comes before the Court on Defendants' Motion *in Limine* to Exclude Testimony of HSI Special Agent Avila (**Doc. 75**). **Doc. 78**; **Doc. 82**. Defendants argue that much of the proposed testimony is irrelevant. **Doc. 75 ¶¶ 9–11**. In the alternative, Defendants request a hearing to ensure that Special Agent ("SA") Avila's testimony meets the requirements of Federal Rule of Evidence ("Rule") 702. *Id.* ¶ 20. In isolation, the Government's notice of intent to offer SA Avila's testimony does not provide sufficient grounds for establishing the reliability of his testimony. Therefore, the Court will hear evidence regarding the reliability of the proposed expert testimony at a pretrial hearing.

Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is well-taken, and therefore, is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

On November 20, 2024, Mario Gonsalez, Jr., Guillermo Garcia, Jr., and Cruz Zermeno ("Defendants") were arrested after law enforcement discovered approximately twenty-five pounds of methamphetamine in the trunk of the vehicle in which they traveled. **Doc. 74-1 at 6–7**. Defendants are charged with several drug violations relating to this seizure. **Doc. 58**.

On March 7, 2025, the Government gave notice of its intent to offer the testimony of SA Avila (**Doc. 49**). The Government intends to elicit expert testimony from SA Avila about methamphetamine trafficking methods and whether the amount of methamphetamine seized is consistent with distribution amounts. *Id.* **at 4**. The Government posits that SA Avila has "accrued specialized knowledge regarding . . . the manner and means of contemporary methamphetamine trafficking, through [fourteen] years of law enforcement investigations and operations involving drug trafficking." *Id.* The Government's notice provides that SA Avila has conducted "multiple investigations of drug trafficking" and served as a task force officer with the DEA. *Id.* **at 3**.

On July 1, 2025, Defendant Garcia moved to exclude SA Avila's proposed testimony and set an evidentiary hearing in the alternative. **Doc. 75 ¶¶ 12–13, 21**. Defendants Gonsalez and Zermeno joined the Motion *in Limine* respectively. **Doc. 78**; **Doc. 82**. The Government opposes the Motion in full. *See* **Doc. 83 at 1**.

## LEGAL STANDARD

The admissibility of expert witness testimony is governed by Rule 702. Pursuant to Rule 702, a witness who is "qualified as an expert by knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. District courts operate as a "gatekeeper" in admitting or excluding expert testimony. *United States v. Nacchio*, 555 F.3d 1234, 1242 (10th Cir. 2009) (en banc).

In light of the strong preference for admitting evidence that potentially helps the jury, Rule 702 is a liberal standard. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995). The proponent of the expert bears the burden to establish admissibility by a preponderance of the evidence. *See Nacchio*, 555 F.3d at 1251.

## DISCUSSION

Defendants argue that SA Avila's proposed testimony should be excluded because it is irrelevant. **Doc. 75 ¶¶ 9–12**. Alternatively, Defendants request a hearing at which evidence will be presented on the reliability of SA Avila's proposed testimony. *Id.* **¶ 20**. Defendants also argue that SA Avila's testimony should be excluded on Rule 403 grounds. *Id.* **¶ 13**. The Government argues that the proposed testimony is admissible and that a *Daubert* hearing is unnecessary. **Doc. 83 at 2–4**.

I. **Whether SA Avila's expert testimony is admissible.**

In carrying out its gatekeeping function, a court first determines whether the expert is sufficiently qualified by "knowledge, skill, experience, training, or education" to give her opinion. Fed. R. Evid. 702. Proper expert testimony must be relevant. Fed. R. Evid. 702; *see also United States v. Archuleta*, 737 F.3d 1287, 1297 (10th Cir. 2013). If the expert is sufficiently qualified and the proposed testimony is relevant, a court determines whether the expert's opinion is reliable. *See Nacchio*, 555 F.3d at 1241. The Court addresses each inquiry in turn.

A. **SA Avila is sufficiently qualified.**

Defendants do not object to SA Avila's qualifications. *See* **Doc. 75**. In light of SA Avila's professional experience investigating drug trafficking along the Southwestern border, the Court finds that SA Avila is sufficiently qualified as an expert in the subject matter of contemporary methamphetamine trafficking.[1]

In determining whether a non-scientific expert is sufficiently qualified, courts consider whether the expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citation modified). The purpose of the qualifications requirement is to ensure that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Medina-Copete*, 757 F.3d 1092, 1101 (10th Cir. 2014) (quoting *Kumho Tire Co.*, 526 U.S. at 157).

Here, SA Avila has served in federal law enforcement along the United States' Southwestern border for fourteen years. **Doc. 49 at 3**. He participated in investigations and seizures of controlled substances that were smuggled into the United States from Mexico for six years. *Id.*

---

[1] Defendants also contend that SA Avila is testifying to matters that require "no specialized knowledge" which implicates *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). **Doc. 75 ¶ 22**. *Mejia* is inapposite for several reasons. The Tenth Circuit has repeatedly held that police officers may testify as experts based on their experience since the average juror is often "innocent of the ways of the criminal underworld." *United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014); *see also United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (finding that officers "can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters"). Further, SA Avila is not testifying to facts derived from this case as he was not a case agent here. Rather, SA Avila's proposed testimony is about his general knowledge acquired from his experience and how that can provide context for the facts of this case. SA Avila is not "simply disgorge[ing] his factual knowledge" to "satisfy the elements" of the crime. *Mejia*, 545 F.3d at 191. Rather, synthesized testimony from "various source materials" constitutes proper expert testimony. 545 F.3d at 197. Here, SA Avila draws on experiences from numerous years of law enforcement, not his experiences from a single source or the case at hand. Thus, *Mejia* is inapposite to our case.

4

For the past eight years, SA Avila has been a Criminal Investigator and Special Agent of Homeland Security Investigations ("HSI"). *Id.* During his time with HSI, he has conducted multiple drug trafficking investigations and served as a task force officer with the DEA. *Id.* The Tenth Circuit has held that officers with similar levels of experience are sufficiently qualified to testify as experts. *See, e.g.*, *United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009) (finding no abuse of discretion in allowing the testimony of a DEA investigator with fifteen years' experience); *United States v. Duran*, 941 F.3d 435, 452 (10th Cir. 2019) (finding no abuse of discretion in allowing agent testimony on the coded language of intercepted calls because the agent had "over 16 years' experience . . . including observation of 75 to 100 drug deals and more than 50 controlled buys"). The Tenth Circuit has allowed expert testimony by agents with considerably less experience as well. *See, e.g.*, *United States v. West*, 671 F.3d 1195, 1201 n.6 (10th Cir. 2012) (finding an officer with two years of experience dealing with drug cases to be qualified as an expert in drug distribution); *United States v. Harris*, 903 F.2d 770, 775–76 (10th Cir. 1990) (finding an FBI agent with four years of experience in the drug records analysis subunit qualified as an expert on books and records involved in drug transactions). Accordingly, the Court finds that SA Avila's fourteen years of experience investigating drug trafficking qualifies him to testify as an expert in the matter.

      B. **The proposed testimony is relevant.**

Defendants argue that the following pieces of proposed expert testimony are irrelevant: (1) any discussion of "methods" beyond smuggling methamphetamine in the trunk of a locked car; and (2) how methamphetamine production and trade has evolved such that it is now primarily manufactured in Mexico and trafficked across the Southwestern border. *See* **Doc. 75 ¶¶ 9–12**. The Government contends that SA Avila's specialized information will assist the jury in understanding

the context in which the methamphetamine was found and the significance of the large quantity seized from the trunk. **Doc. 83 at 3**. The Court addresses each of Defendants' objections in turn.

Under Rule 702, the "touchstone of admissibility . . . is helpfulness to the trier of fact." *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991). The inquiry of whether expert testimony will assist the trier of fact is "essentially a question of relevance." *United States v. Rice*, 52 F.3d 843, 847 (10th Cir. 1995) (citing *Daubert*, 509 U.S. at 113). To determine whether the testimony will assist the trier of fact, a court considers the following non-exclusive factors: (1) whether the testimony is relevant; (2) whether the testimony is within the jury's common knowledge and experience; and (3) whether the testimony will usurp the jury's role in evaluating witness credibility. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006).

### 1. Testimony about methods of drug smuggling.

Defendants object to the proposed testimony about drug-trafficking methods and argue that it is irrelevant. **Doc. 75 ¶ 9**. The Government argues that testimony about the means and methods of methamphetamine distribution, being outside the common knowledge of the jury, serves to assist the jury in deciding a key issue. *See* **Doc. 83 at 2**. Since the methods of methamphetamine trafficking are not common knowledge to a jury, the Court finds that discussion of such methods will assist the jury and provide helpful context in its determination of key issues.

Here, Defendants concede that the alleged method of "smuggling [methamphetamine] in the locked trunk of a car" is relevant. *See* **Doc. 75 ¶ 9**. Additionally, since "the average juror is often innocent of the ways of the criminal underworld," testimony about methods involving the transport of methamphetamine across and along the Southwestern border would provide the jury helpful context. *See United States v. Garcia*, 635 F.3d 472, 477 (10th Cir. 2011). Further, testimony about the methods of methamphetamine trafficking will not usurp the jury's role in witness

6

credibility. The Tenth Circuit has found "no problem with the nature" of qualified, expert testimony that discusses "the movement of drugs and drug profit along I-40" and "common practices of drug-trafficking organizations, including the use of scales . . . and how cars are typically registered." *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1259–60 (10th Cir. 2020); *see also Garcia*, 635 F.3d at 477 (noting that pursuant to Rule 702, the Tenth Circuit "routinely allow[s] law enforcement experts with 'other specialized knowledge, to opine as to the means and methods of the narcotics trade'"). Accordingly, the Court finds that expert testimony discussing the methods of methamphetamine trafficking, provided that the discussion continues to be helpful to the jury, is relevant under Rule 702.

### 2. Testimony about how methamphetamine production and trade has evolved.

Defendants contend that much of the proposed testimony that falls under the category of the evolution of methamphetamine production and trade is irrelevant.[2] **Doc. 75 at 5**. Specifically, Defendants take issue with the following subjects of SA Avila's intended testimony:

> [H]ow the methamphetamine production and trade has evolved . . . that methamphetamine is no longer manufactured in appreciable quantities in local mobile homes, recreational vehicles, and clandestine laboratories . . . most methamphetamine . . . has been manufactured in Mexico in highly pure concentrations . . . drug traffickers smuggle methamphetamine across the

---

[2] Defendants also argue that SA Avila's testimony about "drug trafficking organizations and activity derived from his education" is irrelevant under Rule 103 and 401. **Doc. 75 at 5**. The Court notes that the Government does not state in its notice any intention to have SA Avila testify about "drug trafficking organizations and activity derived from his education" as Defendants quote. *See* **Doc. 49**. The Government intends to elicit testimony based on SA Avila's "specialized knowledge of drug trafficking methods" and his opinion about whether the amount of methamphetamine seized is consistent with distribution amounts. *Id.* **at 4**. The Government gives notice of its intent to elicit testimony from SA Avila about how methamphetamine production and trade has evolved and practices that are contemporarily used. *See id.* **at 5**. To the extent that this is what Defendants refer to as "activity derived from his education," the Court finds the Government's proposed testimony relevant.

7

southwestern border, and significant quantities of methamphetamine are smuggled into California.

*Id.* ¶ 10.

Each of the subjects that Defendants contend are not relevant work together to contextualize the case for the jury. As Defendants note, the relevant alleged "method" of methamphetamine transportation here is smuggling by vehicle. *Id.* ¶ 9. More specifically, it is alleged that Defendants were in a vehicle that, traveling east-bound on I-40, had a California license plate and 11.74 kilograms of 98% pure methamphetamine in the trunk. *See* **Doc. 49 at 1–2**. Thus, the intended testimony that "methamphetamine is no longer manufactured in appreciable quantities [locally]" and that most methamphetamine "has been manufactured in Mexico in highly pure concentrations" before being smuggled across the Southwestern border to places like California serves to contextualize the evidence that the Government plans to put before the jury. *See Medina-Copete*, 757 F.3d at 1106 (finding expert testimony relevant that "contextualized the evidence that the jury had already seen and provided a basis for the inference that, given the quantity and purity of the methamphetamine," it was less likely the defendants were unaware of its presence); *see also United States v. Martinez*, 749 F. App'x 698, 710 (10th Cir. 2018) (finding that a district court did not err in allowing testimony that did not expressly link a defendant to drug trafficking but did contextualize the evidence already presented). Therefore, provided that the evidence before the jury allows for such an inference to be made, the intended testimony provides context and has at least some tendency to make it more or less likely that Defendants were engaged in smuggling methamphetamine.

Accordingly, the Court finds that SA Avila's testimony that the Government intends to elicit is relevant and will provide helpful context for the jury.[3]

### C. Without more, the Court cannot find that the proposed testimony is reliable.

In asking for a pretrial hearing, Defendants seem to question the reliability of SA Avila's proposed testimony. *See* **Doc. 75 ¶ 7**. The Government contends that the proposed testimony is reliable and a *Daubert* hearing is unnecessary. **Doc. 83 at 3–4**. Without more than the Government's expert notice, the Court cannot find that the proposed testimony is sufficiently reliable under Rule 702.

Rule 702 requires a district court to assess "the underlying reasoning and methodology" of the expert. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018). The *Daubert* inquiry extends to expert testimony that is not purely scientific because a district court has "'the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Medina-Copete*, 757 F.3d at 1101 (quoting *Kumho Tire Co.*, 526 U.S. at 142).

In some cases, the *Daubert* factors may be inapposite for assessing reliability due to the "nature of the issue, the expert's particular expertise, and the subject of his testimony." *Garza*, 566 F.3d at 1199. Thus, the *Daubert* factors are "not to be applied woodenly in all circumstances." *Id*. Where the *Daubert* factors are inapposite, a court may still certify an expert so long as the court determines the testimony is sufficiently reliable. *See id*. The Tenth Circuit has held that law

---

[3] Defendants take issue with SA Avila's proposed testimony that he reviewed documents pertaining to the methamphetamine seized from "defendants' car" because the car was registered to Defendant Gonsalez's sister. **Doc. 75 at 3**. Since the statement "defendants' car" may be misleading, SA Avila should refrain from referring to the car as "defendants' car," and refer to the car in a factually accurate manner such as "the car registered to Defendant Gonsalez's sister" or "the car defendants were in."

enforcement officers "can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters." *Id*. But witnesses that rely primarily on experience must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Medina-Copete*, 757 F.3d at 1104 (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendment)).

Here, SA Avila's intended testimony is based on his fourteen years of experience in which he has investigated drug trafficking and seized drugs smuggled into the United States from Mexico. **Doc. 49 at 3**. The Government states that SA Avila has "accrued specialized knowledge" in "the manner and means of contemporary methamphetamine trafficking, through years of law enforcement investigations and operations." *Id.* **at 4**. SA Avila will testify that "he has reviewed law enforcement reports, photographs, and laboratory reports regarding the methamphetamine seized in this case." *Id.* **at 5**. The Government states that SA Avila is expected to opine that most of the methamphetamine seized "exceeds personal use quantities, and that the packaging, location, and quantity of the methamphetamine is consistent with distribution." *Id.* **at 6**. The Government contends that SA Avila's opinions are "[d]rawing on his law enforcement experience" and his "specialized knowledge accrued through years of experience investigating the criminal distribution of methamphetamine." *Id.* **at 5–6**. Thus, the Government asserts that SA Avila's conclusions are drawn from his years of experience. *See United States v. Gutierrez*, No. 22-8045, 2023 WL 7103979, at *5 (10th Cir. Oct. 27, 2023) (finding an expert's experience led to his conclusions when the expert had twelve years of related experience and "repeatedly affirmed that his interpretations were based on his training and experience"); *see also Cristerna-Gonzalez*, 962 F.3d at 1260 ("Courts have repeatedly admitted similar testimony from qualified law-enforcement witnesses.").

However, the Government's notice does not explicitly explain why SA Avila's experience is a sufficient basis for his opinion. The Court is led to assume that SA Avila's fourteen years of experience in drug interdiction forms a sufficient basis for his opinions. But the Court will not assume that there are specific instances within those years of experience that form a sufficient basis to opine on the methamphetamine in this case. Additionally, the Government posits that SA Avila "will testify that he has reviewed law enforcement reports, photographs, and laboratory reports" regarding the methamphetamine seized in this case. **Doc. 49 at 5**. Without hearing SA Avila's testimony, the Court will not assume that it will sufficiently demonstrate how his experience is reliably applied to these facts. While "*Medina-Copete* is the exception not the rule," *see United States v. Vann*, 776 F.3d 746, 759 (10th Cir. 2015), the Court is still required to find that the proposed testimony is reliable. Accordingly, based on the Government's expert notice alone, the Court cannot yet find that SA Avila's intended testimony is sufficiently reliable to satisfy the Rule 702 inquiry.

## II. The Court will hold a hearing on the reliability of SA Avila's proposed testimony.

Defendants request a hearing intending to ensure that SA Avila's testimony is "based on sufficient facts or data," the "product of reliable principles and methods," and that it will assist the jury. **Doc. 75 ¶¶ 19–21**. The Government contends that a *Daubert* hearing is not necessary because the proposed testimony is not extraordinary or controversial. **Doc. 83 at 4**. While not extraordinary or controversial, the Court will hold a hearing to establish the reliability of SA Avila's testimony

The Tenth Circuit has found that a district court may decline to hold a *Daubert* hearing where the disputed evidence does not involve a "new scientific theory and the testing methodologies [are] not new or novel." *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999); *see also United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999) (noting that district

11

courts are "granted great latitude . . . in deciding whether to hold a formal hearing"). While a district court is afforded broad discretion in deciding how to conduct its reliability analysis, the district court must perform its gatekeeping function. *See Goebel v. Denv. and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citing *Kumho Tire Co.*, 526 U.S. at 158–59 (Scalia, J., concurring)); *see also United States v. Velarde*, 214 F.3d 1204, 1209 (10th Cir. 2000) ("[T]he court must, on the record, make *some* kind of reliability determination.").

Here, the Court notes that the reliability analysis is mandatory. In its expert notice, the Government provides information pertaining to SA Avila's fourteen years' experience, but nothing about his education or training.[4] *See* **Doc. 49**. Thus, the Court must characterize SA Avila as an expert relying primarily on experience. *See Medina-Copete*, 757 F.3d at 1104 (noting that an expert that relies primarily on experience must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). In assessing the reliability of SA Avila based solely off the Government's expert notice, the Court cannot find that SA Avila's fourteen years of experience in drug interdiction, without more detail, form a sufficient basis for his opinions. Additionally, the Court cannot find that SA Avila's expected testimony that he reviewed reports and photographs regarding the methamphetamine in this case sufficiently demonstrates how that experience is reliably applied to the facts. Accordingly, the Court will wait to determine the reliability of SA Avila's proposed testimony until hearing further evidence on SA Avila's experience, training, and education.

---

[4] The Government states that it provided SA Avila's resume separately to Defendants, *see* **Doc. 49 at 7**, but the Court is not in possession of SA Avila's resume. SA Avila's resume, in addition to testimony at a hearing prior to trial, will assist the Court in determining the reliability of the proposed testimony.

### III.   Rule 403 does not warrant excluding the proposed testimony.

Defendants argue that SA Avila's proposed testimony is more prejudicial than probative because he was "not a witness to the events." **Doc. 75 ¶ 13**. The Court disagrees.

Under Rule 403, evidence "is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or [innocence] of the crime charged." *United States v. Tan*, 254 F.3d 1204, 1211–12 (10th Cir. 2001) (citation modified). Even if unfair "prejudice is found, it must substantially outweigh the probative value of the evidence in order to be excluded." *Id.*

Here, the Court finds that the probative value of assisting the jury understand the context of the evidence is not outweighed by any unfair prejudice. It is immaterial that SA Avila was "not a witness to the events" since he will offer expert testimony about methamphetamine trafficking methods and whether the amount seized is consistent with distribution amounts based on his experience. *See* **Doc. 49 at 3–6**; *see also Garza*, 566 F.3d at 1199 (finding that officers "can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters"). If SA Avila's testimony crosses into Rule 403 territory, the Court will consider objections. Therefore, at this time, the Court finds that the probative value of SA Avila's proposed testimony is not substantially outweighed by any unfair prejudice.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Motion *in Limine* to Exclude Testimony of HSI Special Agent Avila (**Doc. 75**) is hereby **GRANTED IN PART and DENIED IN PART** for reasons described in this Memorandum Opinion and Order.

The Court will schedule and hold a hearing to hear evidence on the reliability of SA Avila's proposed testimony in light of his experience, training, and education. After the hearing, the Court will determine whether the proposed testimony is sufficiently reliable.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE